WHITE, *Appellant,* v. KELLER *et al.*

Division One, March 13, 1893.

1. **Ejectment:** POSSESSION: CLAIM OF TITLE: LIMITATION. Ejectment may be maintained upon a right acquired by simple possession, though short of the period required to confer title under the statute of limitations, and notwithstanding the rule that the plaintiff must recover on the strength of his own title. But the prior possession, which will overcome one subsequently acquired by a mere intruder, must have been accompanied by a claim of title, otherwise the parties will be left where they are found.

2. ———: ———: ———. The taking possession of land without other claim of ownership than it was surplus land in the block and without an owner is not such a prior possession under claim of title as would support a judgment in ejectment against one in possession who was also without claim of title.

*Appeal from Newton Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

*A. J. Harbison* and *O. L. Cravens* for appellant.

The trial court certainly misconceived the testimony and the law. The plaintiff certainly made a *prima facie* case. *Dale v. Faivre,* 43 Mo. 556; *Davis v. Thompson,* 56 Mo. 39; *Norfleet v. Russell,* 64 Mo. 176; *Crockett v. Morrison,* 11 Mo. 3; *Schultz v. Arnot,* 33 Mo. 172; *Bledsoe v. Simms,* 53 Mo. 305; 6 American & English Encyclopedia of Law, p. 227; *Christy v. Scott,* 14 How. (U. S.) 282. Before the trial court, under the evidence in this case, could render a judg-

ment in favor of Baurdick, it must of necessity have found that the plaintiff voluntarily abandoned the fifteen front feet of the strip, the possession of which according to the testimony was taken by stealth, against the will and without the consent of plaintiff's grantor McElhany or plaintiff. The circumstances all point to the fact that plaintiff had not abandoned the front part of the strip at least, for Baurdick alleged that he took the fifteen feet for the mere purpose of acquiring more storage room, without making any claim of title; and further, plaintiff brought this suit within six years after the cause of action accrued, and presumably under the facts, as soon as he ascertained that Baurdick was claiming the fee. The abandonment is accomplished only by voluntarily surrendering dominion over the property with the definite intention at the time of not resuming or again claiming the ownership. Anderson's Dictionary of Law, pp. 2 and 1093; *Duffy v. Willis*, 99 Mo. 132; *Baroda v. Blumenthal,* 20 Mo. 162; *Fine v. Public Schools*, 39 Mo. 59; *Judson v. Maloy*, 40 Cal. 309. Upon the facts in this case plaintiff ought to have had judgment in the lower court for the possession of at least the front fifteen feet.

*George Hubbert* for respondents.

Even if it could truly be said that the plaintiff or any one under whom he claims ever had at any time absolute adverse possession of the premises sued for, prior to defendant's possession, yet the language of this court in a case decided in 1881 would be most apt and appropriate for application, here to-wit: "It was not shown that White or McElhany had occupied the premises for a sufficient length of time to give him a title by reason of the operation of the statute of limita-

tions; nor that his possession was prior to that of defendant; nor that his possession, even though short of a statutory bar, was taken and held under a claim of right; nor but what he had abandoned that possession." Something more than a mere naked prior possession is necessary as a basis for an action of ejectment. *Alexander v. Campbell*, 74 Mo. 142, 146; *Dunn v. Miller*, 75 Mo. 260; *Prior v. Scott*, 87 Mo. 303. The cases cited by appellant do not support his contention.

MACFARLANE, J.—This suit is ejectment to recover a part of lot 1, in block 3, of McCord's addition to Neosho. The tract in dispute is described as follows: "Commence at a point twenty-four feet east of the northwest corner of said lot 1, thence east nine feet, thence south two hundred feet, thence west nine feet, thence north two hundred feet to the beginning." Lot 1 is in the southeast corner of the block and fronts south. Defendants admitted the possession, two of them as tenants of their co-defendant, Baurdick, who claims title. The lot (1), as platted, has a frontage of forty-eight feet and a depth of two hundred feet. On the trial it seemed to have been taken as agreed that one Coller was the original owner of the whole lot, and in 1877 he conveyed to John T. McElhaney the west half thereof. Plaintiff claimed under a warranty deed dated March 17, 1884, from McElhaney, conveying to him the west half of the lot and a quitclaim to the strip in dispute.

In 1870 defendant Baurdick, claiming title from Coller, built a house on the east half of lot 1, which extended to the east over on to the street as platted in McCord's addition, about ten feet. In 1877 McElhaney took possession of and built a frame house upon the west half of lot 1. His possession included twenty-four feet, the full half of the lot as platted. This house extended back about seventy-five feet from the front of

the lot. About that time defendant inclosed the east half of lot 1, which lay in the rear of his house, with a fence which took in and inclosed the north one hundred feet of the nine feet in controversy and kept it inclosed until the trial in 1890. About 1880 or 1881 McElhaney built a platform on the south end of this strip along the side, and of the depth of his house. In 1882 defendant inclosed the front fifteen feet by putting a roof over it. From the time plaintiff's grantor took possession to the building of the platform, McElhaney used the strip as a place for depositing empty goods boxes and barrels, and plaintiff, then tenant of McElhaney, kept up the same use after the platform was built, until the front was covered in, after which he used the part back of the shed and between it and defendant's fence for the same purpose. Neither party made objection to the use the other made of the lot.

Both plaintiff and McElhaney testified that they understood that defendant had a deed from Coller for the east half of the lot and that he claimed to own the disputed strip under that deed. No deed was introduced.

The suit was commenced in October, 1890, and the ouster was laid March 7, 1884. Defendants offered no evidence, and the court who sat as a jury at request of defendant, declared the law as follows: "Upon the evidence adduced by the plaintiff he cannot recover in this case." The judgment was for the defendant and plaintiff appealed.

As the case comes to us under the evidence neither party has shown a paper title to the lot in question. It appears that defendant inclosed by fence the north half of the lot more than ten years before the suit was commenced, and, from that date, had continued in the actual and uninterupted possession. Indeed plaintiff virtually concedes that the judgment was right as to

the north one hundred feet of the lot, and we will dismiss that part from our consideration.

The title and right to the possession of the south one hundred feet is only such as may be presumed from actual possession and the circumstances under which it was held. No other evidence of title on either side having been shown, the question of possession, its character and the claim made under it, becomes all important.

There is no doubt that a suit in ejectment may be maintained upon a right acquired by simple possession though short of the period required to confer a title under the statutes of limitation, and notwithstanding the rule that the plaintiff must recover on the strength of his own title. It was said by CURTIS, J., in *Christy v. Scott*, 14 How. 282, "a mere intruder cannot enter on a person actually seized and eject him, and then question his title, or set up an outstanding title in another. The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property. But if the plaintiff had actual, prior possession of the land, this is strong enough to enable him to recover it from a mere trespasser who entered without any title." From the cases, say Sedgwick & Waite (sec. 718), "it follows that where there is an absence of proof of title on either side, a presumption of title in favor of the first possessor may be indulged." Trial of Title to Land.

These rules of course require qualification, depending upon the character of the possession and the nature of the claim under which it was held. It is manifest that the possession must have been actual and exclusive according to the character of the land and the uses to which it was adapted, and that the claim under which it was held must have been of a title which, if

held at the trial, would have entitled the holder to recover. A possession under a claim to a lease, an estate for life or a mere license which had ended, would raise no presumption of a title in fee. No more would the possession of one claiming under no lawful right raise a presumption of any legal right or possession. Sedgwick & Waite on Trial of Title to Land, secs. 718-720; *Ricard v. Williams*, 7 Wheat. 105; *Rawley v. Brown*, 71 N. Y. 85; *Crockett v. Morrison*, 11 Mo. 7; *Dale v. Faivre*, 43 Mo. 556; *Bledsoe v. Simms*, 53 Mo. 308; *Norfleet v. Russell*, 64 Mo. 176.

In the early case of *Crockett v. Morrison, supra*, the rule was laid down by this court as follows: "As the action of ejectment is a possessory action, where no title appears on either side, a prior possession, though short of twenty years, will prevail over a subsequent possession which has not ripened into a title, provided the prior possession be under a claim of right and not voluntarily abandoned."

It will be found in all cases where the question has been raised that the prior possession which will overcome one subsequently acquired by a mere intruder must have been accompanied with a claim of title, otherwise the parties will be left where they are found. *Dale v. Faivre, supra; Norfleet v. Russell, supra; Alexander v. Campbell*, 74 Mo. 146; *Dunn v. Miller*, 75 Mo. 272. The petition shows and the answer admits that the defendant at the commencement of the suit, in October, 1890, was and since March 17, 1884, had been in the actual possession of the south one hundred feet of the land in controversy. Under the foregoing rules defendant must prevail unless plaintiff has shown a prior actual and exclusive possession under claim of title.

Assuming that plaintiff and his grantor took the actual and exclusive possession when they built the

platform in 1880 and 1881, was the claim of title accompanying such possession sufficient to raise a pre-sumption of a title necessary to a recovery in ejectment against the possession taken by defendant when he inclosed the land by putting a roof over it, assuming that he was a mere intruder? We think not.

At the time the platform was built, plaintiff was occupying the house on the west half of lot 1 as the tenant of McElhaney. The platform was constructed under an agreement between plaintiff and McElhaney that the former should furnish the material and the latter would do the work. Plaintiff bought the west half of the lot from McElhaney in 1884 and took a quitclaim deed after defendant had taken the exclu-sive possession. Under the conveyance to him plaintiff took no greater right than his grantor had acquired by his possession.

There were six lots in block 3, and a common under-standing existed that there was a surplus of eight or ten feet more in the block than was called for by the plat. On cross-examination McElhaney testified that this nine feet was known as "stray" property, and the only basis of his claim was that it was "stray" prop-erty. "I thought if anybody ought to have it I ought. I owned three quarters of the block."

So it appears that plaintiff and his grantor took and held possession, not under any claim of title or under a belief of ownership, but because they supposed no one else could assert a better title; that the prop-erty had no owner and they could take it. It was not shown that lot 1 was larger than shown by the plat, but it was shown that defendant's building stood ten feet eleven inches in the street as platted and outside the east line of the lot. The occupancy by defendant of a part of the street does not create a surplus in the lot. The obstruction of the street is a matter between

defendant and the city. The taking possession by plaintiff of the land in suit under the assumption that there was a surplus of land in the block, and that this nine feet was without an owner, and without other claim of right, was not such a prior possession under claim of title as would support a judgment in ejectment against one in possession though also without claim. Judgment affirmed. All concur.